UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                                      CRIMINAL ACTION

VERSUS                                                                      NO. 13-243

TRACY RICHARDSON BROWN                                SECTION "K"(2)


ORDER AND REASONS

Before the Court is a Motion For New Trial (Doc. 151) filed by defendant Tracy Richardson Brown ("Ms. Brown"). Having reviewed the record, memoranda and the relevant evidence, the Court finds no merit in either motion for the reasons that follow.

A. Background

On November 1, 2013, an eighteen-count Indictment against Ms. Brown and Sandra Parkman Thompson issued from a grand jury seated in the Eastern District of Louisiana. (Rec. Doc. 1). The indictment charged Brown with (1) one count of conspiracy to commit health care fraud in contravention of 18 U.S.C. § 1349; (2) one count of conspiracy to pay and receive illegal remunerations in contravention of 18 U.S.C. § 371; (3) nine counts of health care fraud in contravention of 18 U.S.C. §§ 1347 and 2; and (4) seven counts of illegal remuneration in contravention of 42 U.S.C. §§ 1320a-7b(b)(1)(A) and 1320a-7b(b)(2)(A).

Ms. Brown proceeded to trial on April 25, 2016. The United States presented testimony from 16 witnesses and introduced into evidence more than 100 exhibits. While Ms. Brown took the stand in her own defense, overwhelming testimony and evidence was presented which supported the allegations contained in the indictment. A brief review of the testimony and evidence reveals that the verdict was amply supported.

**Kickbacks for Referrals**

Trial evidence supports the finding that Ms. Brown paid kickbacks for patient names and knew that what she was doing was illegal.  Ms. Brown owned, operated, and managed Psalms 23 DME, LLC ("Psalms").   She signed Psalms' Medicare enrollment application, which stipulates that it is illegal to pay kickbacks for patient referrals.  (See Trial Exs. 112, 118, and 125).  Moreover, Melissa Falls[1] testified that in 2007, she explained to Ms. Brown that it was illegal to pay for patient names.  Mary Johnson, Demetrius Temple, and Melanie Batiste each testified that he or she personally negotiated directly with Brown regarding the amounts he or she would receive for each new patient referral and further stated that the only action taken by him or her was to identify and refer patients to Psalms.         Moreover, Ms. Brown had the sole control over the Psalms' bank account and signed checks made out to patient recruiters that corresponded to the amounts each Johnson, Temple and Bastiste testified they were paid for referrals.  These checks were introduced into evidence.  As such, there was significant evidence to support the jury's verdict.

**Submission of Fraudulent Claims to Medicare**

Substantial evidence supported a finding that Ms. Brown knew that Psalms submitted claims to Medicare for durable medical equipment (DME) and orthotics that were not medically needed and not provided.  First, there was sufficient evidence to prove that Ms. Brown knew what she was doing was improper.  Ms. Falls testified that she had been hired by Ms. Brown,

---

[1] Melissa Moss Falls is referred to as Melissa Moss in the government's briefing.  Moss is the witnesses maiden name; however, she is listed as Melissa M. Falls in the Court's Minute Entry of April 28, 2016.  (Rec. Doc. 141)

who is a registered nurse who was experienced working in the Medicare program, to advise Ms. Brown and to review Psalms' operations in relation to compliance issues. Ms. Falls testified that she advised Brown of significant issues and informed her how to come into compliance. She testified that she warned Ms. Brown concerning the high numbers of prescriptions concentrated among a small pool of doctors and large volumes of the same combinations of orthotics prescriptions. In addition, there was testimony from Jonathan Bergey that there are multiple resources available to providers to educate them on Medicare's standards and practices in this regard. This testimony demonstrated convincingly that Ms. Brown understood Medicare's rules and standards regarding claims concerning DME and other orthotics.

The testimony of Drs. Dahlia Kirkpatrick and Anthony Jase underscored the fraudulent nature of these claims as they testified as to their own culpability in the scheme. They wrote prescriptions for unwarranted items for which they were paid by Ms. Brown through Psalms. Psalms then submitted claims for reimbursement for these fraudulently prescribed materials.

Moreover, there were a significant number of beneficiaries that testified that they were basically hustled into claiming a need for DMEs and orthotics which that they did not need, and often they did not even receive the DME that Psalms claimed to provide them. For instance, Cleo Bridges testified on April 27, 2016, (1) that he was never told that he would be responsible for any portion of the bill that was not covered by Medicare and/or his insurance; (2) that he did not receive one of the items for which Medicare was billed; (3) that he attempted to return the power wheelchairs provided to him and his wife Leola without success; and (4) he wrote a letter to Psalms and even went to Psalms' offices in an attempt to return them.

Most significantly, there was unequivocal testimony on April 27, 2016 from Herbert Raschka that Brown bought inexpensive back and knee braces from Mueller Sports Medicine, Inc. (Mueller); however, evidence showed that Psalms then billed Medicare for providing much more expensive orthotics leading to the conclusion that Ms. Brown had committed fraud as to these bills.

Finally, substantial evidence demonstrated that Ms. Brown controlled all aspects of Psalms' operations considering that there were only three other people working at Psalms (one driver and one to two workers, one of whom was in a coma at the time of trial). The only persons who received the benefit of the ill-gotten profits of the company were the defendant and her husband. Evidence demonstrated that the defendant purchased expensive cars, real estate and other items with those profits. No other employee benefitted other than receiving a very modest salary.

In addition, it was clear that the large volumes of the same combinations of orthotics were prescribed by a small pool of doctors. Trial testimony and patient files showed that records of purported measurements of homes of beneficiaries who were supplied power wheelchairs often contained identical measurements.

Another idicia of Ms. Brown's knowledge of the fraud rested with Dr. Dahlia Kirkpatrick's testimony that she prescribe DME for Psalms clients who did not meet Medicare standards and that she had Ms. Brown write her kickback payments to her mother because she was concerned about the impropriety of receiving those funds.

The defense maintains that this evidence was insufficient to convict because much of the government's case against Mrs. Brown consisted of the testimony of three marketers or recruiters

and three physicians who testified that Ms. Brown never specifically instructed them to engage in fraudulent conduct. In addition, the defense argues that none of these witnesses engaged in fraudulent conduct in Ms. Brown's presence. Moreover, Ms. Brown contended at trial that she was an "absentee" owner and as such had no involvement in the billing or coding. She also testified that she did not understand the rules governing the billing of Medicare foe DMEs. (Doc. 151-1). These arguments are unavailing in light of the overwhelming evidence outlined above.

With that as background, the Court will now turn to the legal standard.

**A.  Standard of Review Pursuant to Rule 33**

Rule 33(a) provides, "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."   Also, "motions for new trial are based either on the grounds that the verdict was against the weight of the evidence or that some error was committed by the court or the prosecution which substantially affects the rights of the accused." *United States v. Simms*, 508 F. Supp. 1188, 1202 (W.D.La. 1980). In this instance, the sole ground raised by the defendant is the weight of the evidence; there are no allegations of prosecutorial error.

"The burden of demonstrating that a new trial is warranted 'in the interest of justice' rests on the defendant. *United States v. McElwee*, 2010 WL 235007, *2 (W.D. La. Jan. 15, 2010) citing *United States v. Soto-Silva*, 129 F.3d 340, 343 (5th Cir. 1997). Moreover, Rule 33 motions are not favored and are viewed with great caution. *United States v. Blackthorne*, 34 F.3d 449, 452 (5th Cir. 2004). "The grant of a new trial is necessarily an extreme measure, because it is not

the role of the judge to sit as a thirteenth member of the jury." *United States v. O'Keefe*, 128 F.3d 885, 898 (5th Cir. 1997).

**Weight of the Evidence**

Rule 33 of the Federal Rules of Criminal Procedure provides in relevant part that a court "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim P. 33(a) . "The trial judge may weigh the evidence and may assess the credibility of the witnesses during its consideration of the motion for new trial." *United States v. Robertson*, 110 F.3d 1113, 1117 (5th Cir. 1997) citing *Tibbs v. Florida*, 457 U.S. 31, 37038 (1982).

> In the Fifth Circuit, "the generally accepted standard is that a new trial ordinarily should not be granted unless there would be a miscarriage of justice or the weight of evidence preponderates against the verdict." *United States v. Wright*, 634 F.3d 770,775 (5th Cir. 2011). "In determining whether to grant the motion, the district court must carefully weigh the evidence and may assess the credibility of the witnesses during its consideration of the motion for new trial, but must not entirely usurp the jury's function, or simply set aside a jury's verdict because it runs counter to the result the district court believed was more appropriate." *United States v. Tarango*, 396 F.3d 666, 672 (5th Cir. 2005) (internal quotations and citations omitted). Granting a new trial "should be exercised infrequently by district courts, unless warranted by 'exceptional' circumstances." *Id*. (citations omitted).

*United States v. Presley,* 2012 WL 4903357, *1 (S.D. Miss. October 16, 2012). The appellate court framed the Court's inquiry in *United States v. Tarango*, 396 F.3d 666 (5th Cir. 2005) (internal citations omitted) as follows:

> Setting aside a jury's guilty verdict in the interests of justice may be appropriate under circumstances where the evidence brought forth at trial may tangentially support a guilty verdict, but in actuality, "preponderates sufficiently heavily against the verdict such that a miscarriage of justice may have occurred." . . . Similarly, while vested with discretion to grant a new trial pursuant to Rule 33 if necessary in accordance with the interests of justice, we have observed that this

power should be exercised infrequently by district courts, unless warranted by "exceptional" circumstances.

*Id.* at 672 (internal citations omitted).

Using these standards, the Court finds unequivocally that the evidence preponderates heavily **in favor** of the verdict. Indeed, the evidence was overwhelming. The government witnesses were compelling and trustworthy. The exhibits were clear and demonstrated the scheme and supported the allegations of fraud.

Moreover, even if the evidence presented were all circumstantial, it is of no moment as the standard for a new trial remains the same "regardless of whether a conviction is based on direct or circumstantial evidence." *United States v. Ownes,* 6833 F.3d 93, 1010 (5th Cir. 2012). It is axiomatic that circumstantial evidence is given equal weight as direct evidence.

It was demonstrated beyond a reasonable doubt that the defendant knowingly engaged in conspiracy to commit health care fraud; conspiracy to pay and receive illegal remunerations; as well as specific instance of committing health care fraud and illegal remuneration as charged and convicted as demonstrated by the above-analysis of the Government's evidence. The Government proved beyond a reasonable doubt that Ms. Brown owned Psalms, controlled its Medicare billing and the bank account into which Medicare made payments based upon Psalms' claims. Brown paid kickbacks to patient recruiters notwithstanding that she was informed it was illegal to do so. Brown bought inexpensive braces from Mueller but claimed that she was

supplying beneficiaries much more expensive braces.  As such, the Court finds that the interest of justice is not served by a new trial.   Accordingly,

**IT IS ORDERED** that Motion For New Trial (Doc. 151) is **DENIED**.

New Orleans, Louisiana, this 7th  day of July, 2016.

**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT COURT JUDGE**